The next case is John Doe et al. v. Hopkinton Public Schools, Appeal No. 20-1950. Attorney Wiesner, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Jeffrey Wiesner for the appellant of John Doe and Ben Bloggs. May I have a minute for rebuttal? Yes. How much time, counsel? We will be taking 12 minutes and I will be splitting my time with... No, one minute rebuttal. All right, so you have 11 minutes. Thank you, Your Honor. My co-counsel, Alexandra Deal, is going to be addressing the state free speech statute. I will be addressing the rest of our arguments. The issue presented in this case is did the district court's expansion of the bullying statute and school policy beyond bullies to those who associate with bullies violate appellant Doe's and Bloggs' free speech and free associational rights? I would like, if I could, to highlight some critical facts that I think this case turns on. Number one, Robert Rowe, the alleged bullied student, I will refer to him as Rowe, never made any complaint whatsoever to the school that appellant Doe and Bloggs bullied him. At his interview during the school bullying investigation, Rowe did not mention Bloggs as having any involvement and he specifically stated that appellant Doe did not harm him. The district court specifically found that Rowe had no problems with either Doe or Bloggs. He socialized with Bloggs outside of school. They played video games together and Rowe did not see any of Doe or Bloggs messages that were in the Snapchat that were the reason for his punishment until after the investigation when the school provided the messages to his parents. Based on these facts, the district court found, as it had to, that Doe and Bloggs' comments were not directed at Rowe. They were made privately to a small group of friends and, consequently, the comments were not the but-for cause of Rowe's bullying. Despite that, despite having found those facts and drawn that conclusion, the court still found that Doe and Bloggs could be punished for bullying and the district court expanded the reach of the bullying statute beyond bullies to those who simply associate with bullies and that violates the First Amendment in two ways. First, it violates the requirement of this court's bullying endorsement, which was required under the Tinker's Interference Rights Test, that the school must establish, in order to regulate or punish for speech, a causal nexus between the offending speech and harm to another student. Number two, it violates the First Amendment to punish Doe and Bloggs without a statute that their speech caused any injury. It leaves only their association with those who did bully Rowe and that violates the First Amendment. Pre-association cases hold that, in order to find one's association in a group unlawful, one would have to find that the individual being punished authorized, directed, or ratified speech—I'm taking this language from NAACP versus Claiborne Hardware—or manifested a specific intent to have forward the unlawful or, in this case, the bullying project of a group. To that point, Mr. Wiesner, the district court has this sentence and it says, thus an official could find that by posting these comments, even if they were themselves minor relative to the surrounding nastiness, Doe and Bloggs had signaled their approval and encouragement of the bullying by the other hockey team members. Now, I recognize you say, even if that was true, that's outside the policy, but you're not challenging whether this was within the policy, you're challenging under First Amendment claims, so just take this as the premise for your answer, notwithstanding you may disagree with it. The premise is that if that were true, it would fall within the policy. I know you disagree with that, but take that as true. You still are arguing that under Tinker, a policy that is expansive could be problematic, and I want to know, assuming that Tinker would permit punishment of someone for merely encouraging and signaling approval of bullying of which they're aware, what is your argument that there's simply no evidence to support that finding here? Well, there is no finding, let me just be clear, and maybe I didn't understand the last portion of what you just said. He was unaware. No, counsel, he may have been unaware at the time he complained to his father that he felt he was being bullied by members of the team, but he became aware of these comments by your two clients once the investigation started, and the investigation showed that, in fact, another of the bullying group thought these comments by your clients were sufficiently important that he took screenshots of them and kept them. These were not comments that disappeared. Furthermore, there were a series of interchanges with the members of the group, and I am a little puzzled as to why your clients would have thought in a group of high school teammates engaging in social media that this would be maintained as utterly private when, in fact, it's not directed to only one person. It is not directed to only one person with any sense of, do keep this confidential. Even before the era of social platforms, there was a common saying, if you don't want someone else to know about it, don't say it because word will get out. As I understand the world of social media, that comment gets magnified many, many times because of the nature of social media and the rapid interchanges among members of the group. So would you care to respond to Judge Lynch's question, but if you could just answer my question first, which I don't think I heard you answer. I was curious about whether there was a factual basis for the finding by the district court that Doe and Boggs had signaled their approval and encouragement of the bullying. I think that there's not a factual basis for that, and I'd just like to hear what your argument as to why there is not a factual basis for that finding. What there was are the comments themselves. There's nothing more than that. There's nothing in the record that would suggest anything other than the comments themselves. The district court called them active encouragement, but I would suggest, and our argument is that they speak for themselves. There's nothing about them that encourages anyone to do anything, that even mentions the idea that perhaps Roe is being bullied by other people. These are conversations that are taking place within a small group of friends, and there was every anticipation that these messages would disappear because of the particular application, Snapchat, that they were appearing on. Whether they would disappear or not doesn't answer the question whether it reasonably could be deemed to be encouraging bullying conduct on the part of others. I would say not, that they could not be deemed to be encouraging, even if that is enough under the First Amendment. They are not explicitly encouraging. There's nothing about them that encourages. Suppose at the time they sent those messages commenting on the looks of the family members and himself, they were aware that members of the group were using those same type of messages. Why wouldn't it be fair in that circumstance to make an implicit finding that he knew full well in joining in on the derogatory comments in the Snapchat group that he was signaling the idea that, yeah, let's keep making fun of his kids? I think that you might be able to make that inference. I think in this context, and I mean make that inference generally. In this context, all the evidence points to the idea that this was a private conversation among friends and they were reacting to each other's comments in the conversation. I just want to point out one very critical fact that I'm not sure Judge Lynch is wholly aware of. What is very different about this case than any case that I've seen is that while you might expect that messages like this or there may be some reasonable foreseeability that messages might come in the light of day, in this case, they didn't. They didn't but for the actions of the school. This is very different from cases where the message... Counsel, that's time. Thank you. You have rebuttal time left. Yes. Thank you. Attorney Wiesner, please mute your audio and video. Attorney Diehl, please unmute your audio and video. Introduce yourself for the record and proceed with your argument. Good morning. Alexandra Diehl for the appellate. The district court's expansive reading of the anti-bullying statute to encompass speech that is not directed at a student and does not itself cause harm to that student not only violates federal constitutional principles but also runs afoul of the Massachusetts Education Reform Act, Chapter 71, Section 82. That second argument isn't before us though, correct? The fact that it runs afoul of Section 82, it is, Your Honor. That's an argument that we made in our brief. Was that a claim below? That's a claim below as well. Yes, Your Honor. You had a separate claim, a state law claim? We did. We argued that to punish Dohan Bloggs for this type of speech runs afoul of Chapter 82, which protects speech so long as it doesn't cause any disruption. In other words, you're saying that we have before us both a federal claim and a state law claim? That's right. The district court ruled on that claim. Incorrectly, we would argue, but the district court ruled that, well, it's sort of unclear how the district court came to this conclusion, but that because Dohan Bloggs were found to have caused emotional harm to Roe in this group context that they... Is your claim that the only bullying that a school can regulate is the bullying that is described in that statute so that that statute's preemptive of a local school policy that's broader? No, Your Honor. I think the two statutes have to be read harmoniously. Here, the school clearly did read it broader. Did you make a claim that the school policy was violated? Well, Your Honor, what we claimed is that by reading the statute in the way that... Did you make a claim that the school policy was violated below? Uh, not directly, Your Honor. I think our claim that because the conduct at issue or the speech at issue didn't fall under the policy, I suppose that could be read to be challenging the application of the policy itself. But I think we may be misunderstanding one another, because I think your question was, did we raise this and was it addressed? Well, I'm trying to... No, no, no, no. I'm trying to figure out what the state law question is. Well, the state law question, Your Honor, is by punishing students for speech that neither caused the disruption nor a disorder within the school, did that punishment violate Chapter 82? And the answer is yes. And are you saying that Chapter 82 is preemptive of a broader school policy on bullying? Not that it's preemptive, Your Honor, but the bullying statute... to a school policy that construed the policy to cover this conduct. And did you make an argument that that policy didn't itself cover the conduct so that it was a violation of the school policy? Counsel, that's time. We did make that argument, Your Honor, insofar as we argued that because the conduct wasn't directed at the target, didn't cause harm to the target, and as the ACLU pointed out in its brief, the statute and the policy, which is modeled after the statute itself, doesn't allow for group conduct. You must consider the individual conduct. We did make that argument. Okay, counsel. Thank you. I think we understand. It's a bit like ships passing in the night. You've had your time. Thank you. Thank you. Attorney Deal, please mute your audio and video. Attorney Toner, please unmute your audio and video, introduce yourself for the record, and proceed with your argument. Good morning, Your Honors. Elizabeth Toner with the law firm of Murphy LeMaire Murphy on behalf of the Kelly Huffington Public Schools. With me is Attorney Joshua Coleman, who we'd like to reserve five minutes of our 15-minute time for Attorney Coleman to address the statutory challenges raised by appellants. We've allocated the time already. That way, you are not reserving any time. Okay, proceed. Your Honors, the appellants have not met their burden of showing that the speech and conduct that they were disciplined for is protected by the First Amendment. The findings of the school administrators in making a determination that the appellants violated the school bullying policy was based on the facts before it and after a comprehensive and thorough investigation. To respond to Mr. Reisner's claims that the victim did not know about the conduct in the Snapchat, that's actually erroneous. The record does reflect that during the investigation that was conducted by the school administrators, that the victim did say he was aware of the Snapchat group because he heard the other students in the group talking about it. So, he was aware that this was going on and the conduct of the appellants was part of, and the District Court found this as a part of its findings of fact, which should not be disturbed, that this was a... What supports that finding that they encouraged it? The District Court said that their participation by commenting on the... So, it wasn't just the Snapchat as the court knows. There was video and photos that were taken on campus during bus rides to hockey games in the hockey locker room, etc. Those photos and videos were uploaded to the Snapchat group and then were commented on and kind of piled on by all of the individuals. Another way, other members of the hockey team directly targeted... Let's assume that, okay? In a way that would clearly constitute bullying. What is the evidence that would support a finding that by posting the only two posts that the District Court references, the two appellants here thereby encouraged that bullying? It was the conduct of all of the individuals in the Snapchat group that were commenting on the victim's appearance, voice, etc., the videos and photos that were posted. That whole process of commenting encouraged the additional photos and videos being taken up. So, it was an intertwined process where those... Some students took the video and photos and others... And then used those as fodder for this mockery and this bullying. Not only a fellow student, but a teammate. And that just fed itself and went back and forth and didn't actually end until the victim's father notified the school and then the investigation was conducted by the administration. Arguably, it was reasonable to expect that this bullying behavior by the entire group would have continued but for the bullying complaint. Well, counsel, there's got to be something on the part of these individual defendants to support my constituted encouragement from a reasonable point of view. The mere fact that they were members of the group, that alone can't support the judgment in this respect. And I haven't heard you identify any particular conduct that could reasonably be construed as encouragement. It was the... Well, it was the comments of the individuals as part of the collective conduct that was part of the bullying. That was the encouragement. Yeah, but you seem to be saying an effect of the comments was that it was encouraging. Did what in the record suggest that they were aware that it would have that effect? Well, the fact that they, whether they were aware or not, it is really not relevant. Counsel, before you go down that track, what is the evidence that they were aware that the others were engaged in a course of bullying at the point that they posted their own comments? Had there been prior bullying comments at the time they posted? And to whom were their comments directed? Were they directed to those who had already engaged in more explicit bullying? Five minutes. Their comments were commenting on photos and videos that other individuals had posted to the Snapchat group. For example, blogs had posted, was the victim's grandma in the third row, prompting another comment, another poster to comment about his appearance and so forth. And so this was a round robin of... Let me ask you one other thing. I understood the district court to identify the conduct that clearly constituted bullying as that conduct, which was not merely about Roe, but that directly targeted him. And that conduct included taking pictures without his consent and then whispering about it to him in various ways that would make him feel uncomfortable and was directed at him. I understand the district court to have concluded that neither of the posts by the appellants constitute conduct of that time. Nonetheless, the district court concluded that those posts make them responsible for the bullying because it encouraged that other conduct, which was not just posting in the Snapchat, but was directly targeting Roe. And my question is, what supports the conclusion that by making those posts to the Snapchat, they were directly encouraging the actions by others that directly targeted Roe and weren't merely about him in the Snapchat? Well, again, your honor, the district court found and made clear that the conduct of the appellant was not in isolation and that it was reasonable for the school administrators. And I'm asking why. What are the facts that support that conclusion? Well, the fact that at least as far back as two weeks prior to the victim's father making his complaint, his Snapchat had been ongoing, had involved ongoing back and forth of photos and videos being taken on numerous occasions that then got uploaded to Snapchat. This was an ongoing process of which the victim himself was aware of. And so there could be consequences to permit school administrators in their discretion to prohibit this type of behavior, which can have grave consequences as it did in this case. I may have misunderstood, but I thought you gave a prior answer that one of the plaintiffs here, in fact, commented on family pictures, which then encouraged posting of more pictures of the victim here and family and more comments. It was the conduct of all of the students in the Snapchat that were engaging in this behavior. So one of the other non-appellant students posted a picture and then blog says, are the victim's parents ugly too or did he just get bad genes, which then prompted another student to share another photo of the victim's parents. Again, this was an ongoing back and forth. Let me ask you one other way. Suppose all that happened in the case was posting of all these different pictures. That's all that ever happened. It was just posted among eight of them in the private Snapchat. Would that have been bullying? If it didn't result in an infringement of the victim's rights, then no. But here, those were not the facts and there was an infringement of the victim's rights. And that's because of things that occurred beyond just the posting of pictures, et cetera, correct? Right. It was because of this collective conduct, which was reasonable. And that was the exclusion of him at the spaghetti dinners, the shunning of him, the whisper campaigns, et cetera, right? Yes. And even some of the individuals in the Snapchat acknowledged that it was having a negative impact on his performance on the hockey team. And so just last question, what in the record supports the finding that Doe and blogs were aware of that other conduct you just described? Well, they all knew about it. I mean, that was clear from the investigation that the school assistant principals conducted as part of the response to the victim's father's bullying. They were all aware that a good number of them are aware that it was having a negative impact upon him that he was aware of the group or was struggling during hockey and in the locker rooms. And furthermore, it's reasonable to expect that with a group of teammates... Counsel, that's time. Two more sentences finish up. Only to say that it's reasonable, especially with a group this size that involved students that were all members of the hockey team, that this kind of ongoing behavior that lasted over a period of several weeks would get back to not only the school environment, but to the victim himself. Okay. Thank you. Attorney Toner, please mute your audio and video. Attorney Coleman, please unmute your audio and video. Introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. My name is Josh Coleman, attorney for co-counselor of Pelley Huffington Public Schools. This case has devastating and insignificant implications in that 49 states in the U.S. have bullying statutes. In this particular one, they challenge a very narrow provision of the bullying statute concerning only the emotional harm prong. And first of all, I would suggest to your court, as it's well-established in precedent, that it's strong medicine and last resort, not a first resort to consider or strike a part of a statute unconstitutional when there are other ways of addressing the issue. Furthermore, this court on the First Amendment claim, and as raised by the Commonwealth in their amicus brief as well, did not challenge the infringement of rights provision or the hostile environment provision on the discipline piece. The court did not, as my brother Appellant would claim, didn't address the hostile environment piece on the First Amendment claim, but they also did not to the claim, two claims raised, that the emotional harm is not vague. The standard is, is it understood by persons of ordinary intelligence? You need to look at the whole context of what was going on in this case. There are factual findings in the record that Roe was feeling alone on the team, there was stress in the locker room, transferred out of classes with his aggressors, and the conduct may have impacted his performance on the field. This was more than, as the Appellants disparagingly assert, that it was simply a hurt feelings. The policy and plan that the Appellants are on notice of, and the facts are undisputed under a case-stated procedure, is that name-teasing or conflicts or quarrels among equals is not bullying or is not constituted emotional harm. However, this court, as you're well aware, Judge Linton Norris held, you don't have a constitutional right to be a bully, and bullying is an infringement of rights. And the court, in this case, made a determination that there was emotional harm. As Judge Young explicitly said, a school-age child of common intelligence understands that a sufficiently hard shove can be hurtful, whether that shove is physical or emotional. This case, as the Appellants seem to ignore, involves 14, 15, 16-year-old high school students who are well aware of the conduct of their actions. And unlike in Norris, in this case, Bloggs and Doe, to talk about the targeting piece, specifically mentioned the victim by name in their comments. Furthermore, when you look at the emotional harm prong, you need to look at it in the context of the entire statute, not just those two words. And the key words in Chapter 71-37-0 are the repeated use by one or more students of any verbal or electronic expression directed at a victim that causes emotional harm. The repeated use, which envisions, the legislature envisioned, this collective element, which is clearly here. And furthermore, the courts have repeatedly held in that it's deference to school administrators should be made in making factual findings, which this is a factual finding that we would suggest cannot be disturbed. And there's no evidence to suggest that this was simply that the statute is vague. Secondly, with respect to the argument that the statute is overbroad, there's no evidence. First of all, there's no evidence in the record, nor have the Appellants or Amici articulated sufficient evidence that a substantial amount of protected conduct is prohibited under the First Amendment and that those students still have First Amendment rights. Furthermore, there's no evidence that the chilling effect on other parties not here for this court. I've noticed you're focused on the First Amendment issues about success, and I guess implicitly the policy. Do you have a view about the status of what was described as the state law claim is in this case, whether there is one here? I do agree with the Appellants. They did raise that below, that there was a claim of a violation in Chapter 71-82, and I can respond to that if you'd like. Well, I guess I just, if there is, so to your understanding of the case, that we've got a federal constitutional question on the First Amendment, and we have a separate state law question we have to resolve as to whether, and what is that state law question? How would you understand what was raised below? So the allegation, as I understand it, is they're alleging under the state law, 71-82, that there was no disruption or disorder, and they're raising a claim that was addressed by the SJC indirectly in the Pyle case, but it's a different standard than under Tinker, to be clear. Just to be clear, that is not the claim that your opponent said was being made. You understand the claim to be there was no disruption or disorder. Is that correct? That is correct. 71 is not the bullying statute, right? I'm sorry, can you say that again, please? Sorry, you're fading. The chapter title, the state statute you just referenced, is not the statute that sets forth the standard for bullying in Massachusetts, correct? No, there's a separate statute, Chapter 71, Section 37-0. I understood your opponents to also have contended to us that they raised below a question as to whether the state statute that defines bullying was, as they put it, violated by the policy. Was that raised below? They did not raise a claim below that the policy, well, they raised a claim below that bullying statute and policy, because the Huffington Bullying Statute policy tracks the Massachusetts general bullying law. They incorporate each other. They reference each other. There's further definitions in the policy and plan. Is that a separate state law claim, that if the bullying policy does not encompass this kind of bullying, just given the way it's written and given the way the statute's written, that that's an independent ground for resolving the case and you don't reach the tinker issue? So, if you were to find, hypothetically, that there's no violation of 71-82, which is a broader standard... No, no, no, you're missing the point. We're trying to understand whether the claim that your opponent says she made in this case was, in fact, made and preserved and presented to us for appeal. Does that help? I would say, in the district court, my sister raised the claim that there was a violation of both the bullying statute and a separate count on a violation of 71-82. She did raise that claim. If you're taking that view, put aside 71-82. I understand the district court to have rejected the proposed reading of chapter 37. Is that the bullying statute? 71-37-0, your honor. 71-37 is the bullying statute? Yeah, 37-0. Okay, 37-0. And the one that's the broader one about disruption, what's the name? 71-82. Okay, so 71-0, I understand the district court to have concluded the policy conformed to 71-0 because 71-0 can be read to encompass group bullying, correct? That is correct. And your position on that is that that is also correct? Correct, correct. And that depends on how we read what the word repeating is referring to? Well, actually, the only words they're challenging on the constitutionality argument is... I'm just on the scope. Oh, the scope, yes, correct. And that depends on how we read the word repeat. So do you have an answer to the ACLU amicus brief which suggests that that reading of repeatedly is just not a plausible grammatical reading of the policy and is meant to track the statute? That if the statute doesn't permit this theory of group bullying, then the policy doesn't either, and then this would be in violation of the policy? Well, two things, your honor. First of all, repeated, how bullying works as a practical matter, setting apart the legal aspect of it. I don't agree with the ACLU's interpretation. I think they've too narrowly read those words of repeated conduct. I guess just to nail it down, if we were to agree with the ACLU's reading of the statute, you're not disagreeing that the policy is meant to track the statute, and therefore the application of the policy here would have been in violation of the policy if it went beyond what the statute allowed? No. So even if you found, for example, that the emotional harm was not established, there were two other grounds for the discipline that were not beyond the infringement of rights in a hostile environment. No, you're not grasping my question. The district court concluded that even though the appellants did not directly target, the language of directly targeting in 71-0 does not preclude a finding of bullying because it contemplates a theory of encouraging bullying. Okay? Yes. I read the ACLU to suggest that is not a plausible textual reading of the statute. You're saying you disagree with that. That's fine. If we disagreed with you on that point, and we read the statute as the ACLU does, not to itself encompass this theory of bullying. That then raises the question of what do we do in this case? If the district court, in their policy, uses the same language, roughly speaking, but has applied it to cover group bullying, are you conceding that if the statute doesn't encompass that encouragement theory, that the policy doesn't either, and therefore, the application of it would be in violation of the policy? If the court were to find it does not recognize the legal theory of collective bullying, and you were to look at the individual isolated comments, which we strongly disagree with, I would agree that would potentially raise an issue based on the findings of the violation that the investigator based on the investigation. And that purely state law issue wouldn't have anything to do with Tinker. Correct. Correct. Okay. Thank you. I believe counsel for plaintiff has reserved one minute. Attorney Coleman, please mute your audio and video. Attorney Wiesner, please unmute your audio and video. And you may proceed with one minute of rebuttal. Thank you. Judge Barron, just to continue on the line that had been discussed before, there is no evidence in the record that beyond the speech itself. And our view of that is that that speech is just simply not sufficient to rise to the level of active encouragement that would satisfy the associational rights issues. And even if it were, there is still a further causal problem there. There would have to be some evidence that any sort of encouraging speech, if it existed, actually led to someone doing something. And there is simply no evidence of any causal link. And so, let me just say, to wrap up, that if this expansive interpretation of this statute is left to stand, it will be the... Counsel, that's time. You've made the point before. Thank you. Thank you. Thank you, counsel. That concludes argument in this case. Attorney Wiesner, Diehl, Toner, and Coleman should disconnect from the hearing at this time.